**CARLSON LYNCH, LLP**
Todd D. Carpenter (234464)
tcarpenter@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:   619-762-1910
Fax:   619-756-6991

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERICE ANDRE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALORICA INC.,<br><br>Defendant. | Case No. 8:21-cv-00509<br><br>**CLASS/COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Cherice Andre ("Plaintiff"), by and through her undersigned counsel, brings this Class/Collective Action Complaint on behalf of herself and all others similarly situated against Defendant, Alorica Inc. ("Alorica" or "Defendant"), and alleges as follows, based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1.   As explained herein, under applicable employment laws all non-exempt employees are entitled to premium overtime compensation at a rate of one and one-half (1.5) times their regular rate of pay for all hours worked in excess of forty (40) in a workweek.

2.   Moreover, in the State of California, all non-exempt employees are entitled to premium overtime compensation at a rate of one and one-half (1.5) times their regular

rate of pay for all hours worked in excess of forty (40) in a workweek and/or eight (8) in a workday.

3. Plaintiff brings this action as a collective action to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et. seq.* ("FLSA" or the "Act") on behalf of a class of current and former employees of Defendant who provide business support to Defendant's customers ("Customer Support Representative(s)" or "CSR(s)").

4. Plaintiff also bring this action as a state-wide class action on behalf of a class of current and former CSRs within the State of California, who are or were employed by Defendant, to recover overtime compensation and other wages due pursuant to the California Labor Code, Industrial Welfare Commission Wage Orders and the California Business & Professions Code (collectively the "CA Labor Laws").

5. Customer Support Representatives work hours in excess of what is recorded by Defendant. Despite Alorica's knowledge of this time worked, CSRs do not get paid for the excess time. Because it does not properly record all hours worked by its CSRs, Defendant has failed to maintain accurate employee records for all hours worked, and therefore has failed to provide accurate wage statements to its employees.

6. Further, Plaintiff and CSRs have incurred expenses as a result of working from home during the Coronavirus Disease 2019 ("Covid-19") pandemic. Defendant has failed to indemnify its employees for all such expenses incurred.

**SUMMARY OF CLAIMS**

7. Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the FLSA on behalf of the following similarly situated persons:

> All current and former CSRs who have worked for Defendant within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 2 l 6(b) (the "FLSA Class").

8. Plaintiff also brings this action as a state-wide class action pursuant to Fed. R. Civ. P. 23 to recover unpaid wages pursuant to the CA Labor Laws.

9. Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former CSRs who have worked for Defendant in the State of California within the statutory period covered by this Complaint (the "CA Class").

10. The FLSA Class and CA Class are hereafter collectively referred to as the "Classes."

11. Plaintiff alleges on behalf of the FLSA Class that they are: (i) entitled to unpaid overtime wages from Defendant at the rate of one and one-half times the employee's regular hourly rate for all hours worked in excess of forty (40) hours in any given workweek; and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq*.

12. Plaintiff alleges on behalf of the CA Class that Defendant violated the California Labor Laws by, *inter alia*: (i) failing to pay them overtime at the rate of one and one-half times the employee's regular hourly rate for all hours worked in excess of forty (40) hours in any given workweek, and/or in excess of eight (8) hours in any given workday; (ii) failing to provide accurate wage statements of actual hours worked and wages earned by Plaintiff and the CA Class; and (iii) failing to reimburse them for all expenses incurred during the course of their employment.

13. As a result of Defendant's willful violation of the FLSA and CA Labor Laws, Plaintiff and the members of the Classes were illegally under-compensated for their work.

## PARTIES

14. Plaintiff Cherice Andre is an adult individual and is a resident and citizen of the State of California.

15. Pursuant to Section 216(b) of the FLSA, Plaintiff has consented in writing to be a plaintiff in this action. Her executed Consent To Sue form is attached hereto as Exhibit A.

16. Defendant, Alorica Inc., provides customer management solutions, offering call center services and technical support worldwide. Defendant is headquartered with its principal place of business at 5161 California Avenue, Irvine, California.

## JURISDICTION AND VENUE

17. This Court has original jurisdiction over this action pursuant to 29 U.S.C. § 201 *et. seq.* and 28 U.S.C. § 1331.

18. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL ALLEGATIONS

21. Alorica is the "leading provider of Business Process and Customer Satisfaction Outsourcing solutions" with over 100,000 employees in approximately 130 locations spread out over 14 countries.[1]

22. Alorica provides these services to several large industries such as major wireless telephone and internet providers, healthcare companies, financial institutions, retailers, manufacturers, utility companies, and major airlines.

23. A majority of Alorica's employees are Customer Support Representatives, whose job responsibility entails fielding numerous phone calls throughout the day and providing general customer support.

---

[1] *See* https://www.alorica.com/insight/about-alorica/ (last accessed Dec. 29, 2020).

24. Prior to the Covid-19 pandemic, Customer Support Representatives traveled to one of Defendant's locations in order to perform their job duties and responsibilities.

25. Prior to starting their shift and getting paid, Customer Support Representatives were required to go to Defendant's location approximately 10 minutes early in order to turn on their computers, log in, start all necessary programs, and wait for the system to go through all proper run-ups and updates so that they can receive their first call when their shift starts. Defendant does not begin to record Customer Support Representatives' work-time until they are ready and able to receive their first call.

26. Defendant's Employee Manual (the "Manual") states that:

> Work time is all hours worked for Alorica – whatever, whenever, wherever! For example, work includes regular duties, administrative tasks, training, and travel on behalf of the company, whether it occurs at an Alorica site, a client site, or at home – and whether it's performed before, during, or after regular working hours.

27. The Manual also states that "**All work time must be paid**," and "All time worked (including overtime) must be paid – period."

28. Despite the clear language presented in the Manual, Defendant does not in fact pay its employees for all work time because it fails to pay its employees for the time it takes to accomplish the necessary pre-shift tasks.

29. When this unaccounted for pre-shift work time is added to the employees' recorded hours, Plaintiff and the members of the Class worked in excess of forty hours for which they were denied premium overtime compensation.

**Covid-19 Forces Employees To Work Remotely**

30. The Covid-19 virus has spread, and continues to spread, rapidly across the United States and has been declared a public health emergency of international concern

by the World Health Organization,[2] and the United States Department of Health and Human Services.

31. In response to Covid-19, many states, including those in which Alorica operates, issued Stay at Home Orders (the "Orders"), mandating that non-essential businesses cease operations, that working remotely be encouraged wherever possible, and that residents must remain at home except for essential purposes.

32. In mid-March 2020, as a result of the Orders and certain precautions taken by Alorica, Defendant advised its Customer Support Representatives that they were closing the call center locations, and that the employees have the option to either work remotely or have their employment terminated.

33. In order to work remotely, Alorica required that its CSRs already have, or be able to obtain, a computer with which the CSR can use to run the appropriate programs needed to perform their everyday tasks.

34. While working from home, the list of pre-shift tasks expanded, since the CSRs now had to log in through a Virtual Private Network ("VPN"), which generates and sends a unique identifier code to the employees' personal cell phone. Once they receive the code and input it into the computer, they can perform all of the typical pre-shift tasks necessary in order to start their shift.

35. While working remotely, the pre-shift routine takes approximately 15 minutes per day. Despite the language in the Manual requiring that all work time must be paid, CSRs are not paid during this time.

36. If the VPN code is not sent to the employees' cell phone, or if there are any technical issues with the system or computer throughout the day, the CSR must use their personal cell phone to call for technical support and to advise their supervisor that they are offline.

---

[2] *See* https://www.who.int/news/item/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (last accessed Dec. 29, 2020).

37. While working remotely, Defendant refuses to track the time spent by CSRs communicating and troubleshooting technical issues with management and technical support. As a result, Defendant does not pay its CSRs for this time.

38. Therefore, Plaintiff and members of the Classes spend time prior to their shift, as well as time during their scheduled shift, performing work-related tasks under the control of the Defendant, and do not get paid for such time.

39. In performing their jobs for Alorica, CSRs have also incurred, and will continue to incur, expenses such as cell phone and electricity costs. Plaintiff and some members of the CA Class have also incurred expenses by way of purchasing a computer which is the only means by which they are able work remotely and, thereby, retain their jobs. Defendant has not indemnified its CSRs for any of the expenses incurred.

**Plaintiff's Experience**

40. Plaintiff has been a Customer Care Representative with Alorica since 2015.

41. Plaintiff's main responsibility is to provide general customer and account support for customers of Verizon Wireless.

42. Plaintiff worked with Alorica in its Fresno, California location until around August 2019, when the Fresno location merged with and into the Clovis, California location. Prior to Covid-19, Plaintiff worked at the Clovis location.

43. Plaintiff was typically scheduled to work Monday through Friday from 8:00 a.m. to 5:00 p.m.

44. In addition, Plaintiff and CSRs often were required to work mandatory overtime. During these times Plaintiff would begin her workday at 7:45, and would often only get 45 minutes for a lunch break.

45. In order for Plaintiff to begin her shift at 8:00 or 7:45, she would have to being her logon procedure at 7:45 or 7:30, respectively. However, Defendant did not begin recording her time until she was fully logged-on, which was 8:00 or 7:45.

46. Around mid-March 2020, Plaintiff received an email from Alorica advising that employees may work remotely if they meet certain criteria, such as having a working computer to perform the job functions.

47. Following Defendant's requirements for working remotely and, thereby, remaining employed with Alorica, Plaintiff purchased a computer in mid-March, for approximately $169. Plaintiff ultimately experienced technical issues with this computer and had to purchase a different model computer on March 24, 2020, for approximately $533.

48. Plaintiff used her personal laptop through approximately late May, when Alorica announced that it was having technical issues company-wide with employees using their personal computers. At around that time, Alorica decided to issue company-provided computers. Plaintiff has used a company-provided computer since approximately late May.

49. Even with the company-provided computer, Plaintiff must still perform approximately 15 minutes per day of pre-shift tasks, including generating the VPN code to her personal cell phone. Plaintiff is not paid during this time.

50. Plaintiff uses her own electricity and cell phone to accomplish these tasks, none of which are provided by, or paid for in any part by, Alorica.

51. Alorica does provide Plaintiff with an "internet allowance" during the time she is working remotely.

52. Plaintiff has experienced numerous technical issues while working remotely, which also require her to use her personal cell phone to call Defendant's technical support team and her supervisors. Some technical issues experienced by Plaintiff have taken over three hours to resolve.

53. Plaintiff was not paid for her use of her personal cell phone, nor for the time she spent troubleshooting the technical issues during her scheduled shift, even though she is under the control of Defendant and following Defendant's procedures and practices.

54. Not including her pre-shift routine and technical issues, Plaintiff regularly works in excess of eight (8) hours per day, and in excess of forty (40) hours per week. When her pre-shift routine and troubleshooting time is added, Plaintiff regularly worked at least an additional amount of approximately 1-2 hours a week, and/or 15-30 minutes a day of additional overtime that was not compensated.

55. As a result, due to Defendant's failure to properly record time worked, Plaintiff and CSRs have not been paid premium overtime compensation for all overtime hours actually worked.

## CLASS/COLLECTIVE ACTION ALLEGATIONS

56. Plaintiff brings this action on behalf of the FLSA Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the CA Class for claims under the CA Labor Laws.

57. The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b). The claims brought pursuant to the CA Labor Laws may be pursued by all similarly-situated persons who do not opt-out of the CA Class pursuant to Fed. R. Civ. P. 23.

58. Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, there are likely well over twenty-five individuals in each of the Classes.

59. The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes worked for Defendant and were subject to the same compensation policies and practices.

60. There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class members. Common issues include:

      a.      whether Plaintiff and members of the Classes performed work on behalf of Defendant which Defendant did not record in its time-keeping system;

      b.      whether Plaintiff and members of the Classes performed work in excess of what Alorica has paid them for;

      c.      whether Defendant failed to pay Plaintiff and the members of the Classes premium overtime compensation for all hours worked in excess of forty in a workweek, and/or eight in a workday;

      d.      whether Defendant failed to provide accurate wage statements to its employees;

      e.      whether Defendant has failed to indemnify employees for expenses incurred on Defendant's behalf;

      f.      whether Defendant's conduct violates the California Business and Professions Code; and

      g.      whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages.

61.    Plaintiff's claims are typical of the claims of the Classes she seeks to represent. Plaintiff and all Class members were exposed to uniform practices and sustained injuries arising out of, and caused by, Defendant's unlawful conduct.

62.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no interests adverse to the Classes she seeks to represent and has retained competent and experienced counsel.

63.    The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them. Further, the common questions of law and fact surrounding Defendant's policies and practices toward the Classes predominate over any individual issues present in the proposed Classes.

64. Plaintiff and the Classes she seeks to represent have suffered irreparable damage from the illegal policy, practice and custom regarding Defendant's pay practices.

### FIRST CAUSE OF ACTION

### Fair Labor Standards Act - Failure to Pay Overtime

### (On Behalf of Plaintiff and the FLSA Class)

65. Plaintiff on behalf of herself and FLSA Class realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

66. At all relevant times, Defendant has had gross revenues in excess of $500,000.

67. At all relevant times, Defendant was an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

68. At all relevant times, Defendant employed Plaintiff and each of the FLSA Class Members within the meaning of the FLSA.

69. The FLSA provides that an employer must pay to each of its employees premium overtime compensation in an amount of one and one-half times their regular hourly rate of pay for all hours worked in excess of forty hours per week.

70. Plaintiff and the members of the FLSA Class regularly worked in excess of forty hours per week.

71. As detailed herein, Plaintiff and the members of the FLSA Class performed work for Defendant in excess of that recorded by Defendant.

72. Defendant failed to pay Plaintiff and the members of the FLSA Class premium overtime compensation for this excess time.

73. Defendant violated the FLSA, 29 U.S.C. §§ 201, *et seq*. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

74. Due to Defendant's FLSA violations, Plaintiff, on behalf of herself and the members of the FLSA Class, is entitled to recover from the Defendant compensation for

11
CLASS/COLLECTIVE ACTION COMPLAINT

unpaid overtime wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**Failure to Pay Overtime - Cal. Lab. Code §§ 510, 1194**

**(On Behalf of Plaintiff and the CA Class)**

75. Plaintiff on behalf of herself and CA Class realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

76. As detailed herein, Plaintiff and the members of the CA Class worked hours in excess of forty in a workweek and/or eight in a workday for which they did not receive premium overtime compensation.

77. California Wage Order 4-2001, 8 C.C.R. Section 11040 and California Labor Code Section 510(a) state that an employee must be paid overtime, equal to one and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) per week, and/or eight (8) per day, unless the employee falls under one of the enumerated exemptions.

78. Pursuant to California Labor Code Section 1194, Plaintiff and members of the CA Class are entitled to recover their overtime wages, plus interest, attorneys' fees, and costs, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

**Failure to Provide Accurate Wage Statements - Labor Code §§ 226(a)**

**(On Behalf of Plaintiff and the CA Class)**

79. Plaintiff on behalf of herself and CA Class realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

80. Pursuant to the Labor Code, every employer must provide accurate itemized wage statements at the time employees are paid, showing accurate figures for, *inter alia*, gross wages earned, total hours worked, net wages earned, and all applicable

hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

81. Pursuant to Defendant's employment policies, Plaintiff and the members of the CA Class performed work for Defendant in excess of what Defendant recorded in its time-keeping system.

82. As a result, Plaintiff and the members of the Class did not receive accurate itemized wage statements, as required by law, in that the wage statements provided to them did not accurately reflect correct figures for gross wages earned, total hours worked, net wages earned, and/or all applicable hourly rates in effect with the corresponding number of hours worked at each hourly rate.

83. As a result of Defendant's failure to provide accurate itemized wage statements, Plaintiff and members of the CA Class have been injured in the manner set forth in the Labor Code.

84. Plaintiff and members of the CA Class are entitled to the penalty set forth in Labor Code Section 226(e), to injunctive relief to ensure compliance with the law, to the civil penalty set forth in Labor Code Section 226.3, actual damages, costs of suit, and reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

**Failure to Indemnify - Labor Code § 2802**

**(On Behalf of Plaintiff and the CA Class)**

85. Plaintiff on behalf of herself and CA Class realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

86. Pursuant to Labor Code § 2802, an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties.

87. By requiring Plaintiff and members of the CA Class to expend monies in direct consequence of the discharge of their duties—specifically, expenses necessarily incurred by way of a computer, cell phone bill and electric bill—and failing to fully

indemnify and reimburse them for those expenses, Defendant's refusal is unlawful under the laws and regulations of the State of California.

88. In violation of California law, Defendant has knowingly and willfully refused to perform its obligations to indemnify and reimburse Plaintiff and CA Class members for all expenses incurred. As a direct result, Plaintiff and CA Class members have suffered, and continue to suffer, substantial losses related to the use and enjoyment of such monies, lost interest on such monies, and expenses and attorneys' fees in seeking to compel Defendant to fully perform its obligation under state law, all to their respective damage in amounts according to proof at time of trial.

89. Defendant's conduct violates Labor Code § 2802. As a proximate result of the aforementioned violations, Plaintiff and members of the CA Class have been damaged in an amount according to proof at time of trial. Therefore, pursuant to Labor Code §§ 200, 203, and 2802, Plaintiff and the CA Class are entitled to recover the unpaid balance of expenditures Defendant owes to them, plus interest, penalties, attorneys' fees, expenses, and costs of suit.

**FIFTH CAUSE OF ACTION**

**Unlawful Business Practices - Bus. & Prof. Code §§ 17200, *et. seq.***

**(On Behalf of Plaintiff and the CA Class)**

90. Plaintiff on behalf of herself and CA Class realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

91. Section 17200 of the California Business and Professions Code prohibits any unlawful busines act or practice.

92. Plaintiff brings this cause of action individually and on behalf of the CA Class.

93. Plaintiff and members of the CA Class have suffered and continue to suffer injury in fact and deprivation of wages and monies as a result of Defendant's actions.

94. The actions of Defendant, as alleged herein, amount to conduct which is unlawful and a violation of law. As such, said conduct constitutes unlawful business practices, in violation of Bus. & Prof. Code §§ 17200, *et. seq*.

95. Defendant's conduct has damaged Plaintiff and the CA Class by denying them wages due and payable, by failing to provide proper wage statements, and by failing to indemnify them for expenses incurred. Defendant's actions are thus substantially injurious to Plaintiff and CA Class members, causing them injury in fact and loss of money.

96. As a result of such conduct, Defendant has unlawfully obtained monies owed to Plaintiff and CA Class members.

97. All members of the CA Class can be identified by reference to payroll and related records in possession of the Defendant. The amount of wages and expenses incurred can be readily determined from Defendant's records and/or discoverable evidence. The members of the CA Class are entitled to restitution of monies due and obtained by Defendant during the period of time in which Defendant's conduct was unlawful.

98. Defendant's course of conduct, acts, and practices in violation of the California laws and regulations constitute distinct, separate and independent violations of Section 17200, *et seq*. of the Business and Professions Code.

## SIXTH CAUSE OF ACTION

**California Private Attorneys General Act ("PAGA") - Labor Code §§ 2698,** *et seq.*
**(On Behalf of Plaintiff and the CA Class)**

99. Plaintiff on behalf of herself and CA Class realleges and incorporates by reference the paragraphs above as if they were set forth again herein.

100. PAGA permits Plaintiff to recover civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section 2699.5.

101. Defendant's conduct violates numerous sections of the Labor Code, including, but not limited to, the following:

a. violation of Labor Code § 1194 for Defendant's failure to compensate Plaintiff and all aggrieved employees with the premium overtime compensation for all hours worked in excess of eight hours a day and/or forty hours per week as alleged herein;

b. violation of Labor Code § 226(a) for failure to provide accurate wage statements to Plaintiff and the Class;

c. violation of Labor Code § 1174(d) for failing to maintain proper records; and

d. violation of Labor Code § 204 for failure to pay all earned wages owed to Plaintiff and other aggrieved employees during employment as alleged herein.

102. California Labor Code § 210 provides: "[i]n addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 204.11, 205, 205.5, and 1197.5, shall be subject to a civil penalty as follows: "(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."

103. Labor Code § 558(a) provides: "[a]ny employer . . . who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee."

Labor Code § 558(d) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

104. Defendant, at all times relevant to this Complaint, was an employer or person acting on behalf of an employer who violated Plaintiff's and CA Class members' rights by violating various sections of the California Labor Code.

105. As set forth above, Defendant has violated numerous provisions of the Labor Code sections regulating hours and days of work. Accordingly, Plaintiff seeks the remedies set forth in Labor Code § 558 for herself, the State of California, and all members of the CA Class.

106. Pursuant to PAGA, and, in particular, California Labor Code § 2699(a), 2699.3, 2699.5, and 558, Plaintiff, acting in the public interest as a private attorney general, seeks assessment and collection of unpaid wages and civil penalties for Plaintiff, all other aggrieved employees, and the State of California against Defendant, in addition to other remedies, for violations of California Labor Code.

107. Plaintiff claims herein all penalties permitted by the PAGA, Labor Code § 2698, *et seq.*, and has complied with the procedures for bringing suit specified by Labor Code § 2699.3. By letter dated December 28, 2020, Plaintiff gave written notice by certified mail to the Labor and Workforce Development Agency, and Defendant, of the specific provisions of the Labor Code alleged to have been violated, including the facts and theories to support such allegations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on behalf of herself and the members of the Classes respectfully requests that the Court grant the following relief:

(a) Designation of this action as a collective action on behalf of the FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

17
CLASS/COLLECTIVE ACTION COMPLAINT

  (b) Designation of the action as a class action under Fed. R. Civ. P. 23 on behalf of the CA Class;

  (c) Designation of Plaintiff as representatives of the FSLA Class and CA Class;

  (d) Designation of Plaintiff's counsel as class counsel for FLSA Class and CA Class;

  (e) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and CA Labor Laws;

  (f) For compensatory and punitive damages on the claims for overtime under California law and all other statutory remedies permitted;

  (g) For an order of restitution and all other forms of equitable monetary relief;

  (h) Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

  (i) Awarding pre- and post-judgment interest on any amounts awarded; and,

  (j) Awarding such other and further relief as may be just and proper..

## **DEMAND FOR JURY TRIAL**

Pursuant to the Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury on any and all issues in this action so triable of right.

Dated: March 18, 2021   **CARLSON LYNCH LLP**

        By: */s/Todd D. Carpenter*
          Todd D. Carpenter (234464)
          tcarpenter@carlsonlynch.com
          San Diego, CA 92101
          Tel.:  619-762-1900
          Fax:  619-756-6991

          Gary F. Lynch
          glynch@carlsonlynch.com
          Nicholas Colella
          ncolella@carlsonlynch.com
          1133 Penn Avenue, Floor 5
          Pittsburgh, PA 15222
          Tel.   412-322-9243
          Fax:  412-231-0246

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
gwells@cwglaw.com
Robert J. Gray
rgray@cwglaw.com
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Tel.: 610-822-3700
Fax: 610-822-3800

*Attorneys for Plaintiff*